UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MICHELLE JOYCE SCHILTZ,

        Plaintiff,

v.                                           Case No. 16-C-1566

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

        Defendant.

## DECISION AND ORDER

This is an action for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. 42 U.S.C. § 405(g). Plaintiff claims that the Administrative Law Judge's ("ALJ") erred in failing to explain the basis for his finding that she retained limited use of her right arm and could lift up to five pounds. Upon review of the record, I find that the ALJ did in fact explain how he arrived at Plaintiff's residual functional capacity and substantial evidence supports his finding concerning Plaintiff's use of her right arm. The decision of the Commissioner is therefore affirmed.

## BACKGROUND

On October 23, 2014, Plaintiff Michelle Schiltz, then age 44, filed an application for DIB and SSI with an alleged onset date of January 25, 2013, due to back problems, deterioration, pinched nerves, and fibromyalgia. R. 68, 86. The onset date was later changed to October 24, 2013, to avoid any overlap with the denial of a previous application. R. 19. In any event, the SSA denied the

applications initially on April 23, 2015, and upon reconsideration on August 25, 2015. R. 151–58, 161–70. After her application and request for reconsideration were denied, Plaintiff requested an administrative hearing. ALJ Timothy Malloy held a hearing on June 7, 2016. R. 39. Plaintiff, who was represented by counsel, and David Oswald, a vocational expert, both testified. R. 40.

At the hearing, Plaintiff testified that she last worked on 2013. Her last several jobs had been as a cook in a restaurant. She had also worked as a cashier in retail stores and in factories through temporary employment agencies. R. 44–46. At the time of the hearing, Plaintiff testified she had been living in an apartment with her teen-age daughter and her oldest daughter's four children for whom she had been appointed guardian, though she had recently moved to a hotel by herself due to overcrowding. She was enrolled in Wisconsin Works (W-2), a temporary assistance program for low income parents, from which she received $608 per month, which was supplemented by sporadic child support payments from her ex-husband. Although the W-2 program was intended to last for only two years, Plaintiff had been on it for seven-and-a-half years due to repeated extensions. She testified that at first, she had been looking for a job, but discontinued her search because of her health. R.47–49. She also acknowledged that her criminal record made it hard to get jobs, and that her employment history even before her alleged onset date was sparse. R. 52–53, 56.

As to her physical condition, Plaintiff testified that she had problems with her right shoulder, her lower back and her neck sometimes. R. 56. She had undergone three separate surgeries, a cervical discectomy depression and fusion at C6-7 in March of 2014, and two rotator cuff repairs on the shoulder of her right (non-dominant) arm, also in 2014. R. 49–50. With respect to her cervical problem, Plaintiff testified that she had "good days and bad days with the pain." R. 51. She did not believe her surgeries had significantly improved her pain in her shoulder and neck. Plaintiff

2

also complained of pain in other regions of her body which she attributed to lumbar disc problems and fibromyalgia. R. 58–59. Finally, Plaintiff testified her family physician prescribed unspecified medication for her depression, but she had not seen a psychiatrist or psychologist. R. 55–56.

In a June 21, 2016 decision, the ALJ determined that Plaintiff was not disabled. R. 16–33. Following the five-step sequential process prescribed by the Social Security Administration (SSA), the ALJ concluded at step one that Plaintiff has not engaged in substantial gainful activity since October 23, 2014. R. 21. At step two, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease, degenerative joint disease, COPD, obesity, anxiety, and depression. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled on of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ then determined that Plaintiff had the residual functional capacity ("RFC"):

> to perform light work as defined in 20 C.F.R. § 416.967(b) except she can never climb ladders, ropes and scaffolds; she must avoid moderate exposure to the use of moving machinery and unprotected heights; she cannot reach overhead with the right upper extremity; she is limited to lifting and carrying five pounds with her right upper extremity; she must avoid moderate exposure to irritants such as fumes, odors, dusts, and gases; she is limited to unskilled work performing simple, routine and repetitive tasks; she will be off-task ten percent of the workday in addition to regular breaks; she is limited to occasional decision making and changes in her work setting; and she can only perform work that allows for a flexible pace.

R. 25.

Based on the testimony offered by the vocational expert at the hearing, the ALJ determined at step four that considering her age, education, and work experience, Plaintiff would not be able to return to her past work. R. 62–63. The ALJ concluded at step five, however, again based on the testimony of the vocational expert, that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as counter attendant, marker/labeler, and shipper

3

weigher. R. 32–33. Based on these findings, the ALJ determined Plaintiff was not disabled. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on October 5, 2016. R. 1.

## LEGAL STANDARD

On judicial review, a court will uphold the Commissioner's decision if the ALJ applied the correct legal standards and supported the decision with substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is 'such relevant evidence as a reasonable mind could accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the Agency's own rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2010) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

4

**ANALYSIS**

Plaintiff's sole argument is that the ALJ erred in including the five pound lifting and carrying restriction for her right upper extremity within his RFC and his hypothetical question to the vocational expert. An RFC is the assessment of the extent to which an individual's impairments may cause physical or mental limitations or restrictions that could affect her ability to work. SSR 96–8p, 1996 WL 374184, at *2. The RFC represents "the maximum a person can do—despite his limitations—on a 'regular and continuing basis,' which means roughly eight hours a day for five days a week." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) (quoting SSR 69–8p). In forming the RFC, an ALJ must review all of the relevant evidence in the record, including any information about the claimant's symptoms and any opinions from medical sources about what she can still do despite her impairments. SSR 96–8p at *2.

Plaintiff claims that the ALJ accorded great weight to the opinions of Drs. Mina Khorshidi and Pat Chan, the state agency consultants who reviewed her file, but then ignored their conclusion that she could use her right arm only to assist while lifting. R. 80, 118. Instead of fully adopting all of the state agency consultants' opinions, the ALJ concluded that Plaintiff also retained the ability to lift and carry up to five pounds with her right arm with no overhead reaching. R. 25. Plaintiff contends that "the ALJ failed to explain why he changed the finding, upon what basis he made the change and why he failed to follow the findings of Dr. Chan, a doctor in [sic] whose opinion he gave great weight." ECF No. 12 at 1. She claims that "[t]he ALJ's failure to provide any rationale is an erroneous exercise of discretion." *Id.* at 1–2.

Plaintiff's argument betrays a misreading, or complete failure to read, the ALJ's decision, especially his discussion of the limitations to her right arm. The ALJ did not "change the finding" of Dr. Chan. The record contains several medical source opinions concerning Plaintiff's right arm,

and the ALJ discussed those opinions and the remaining medical and other evidence that bore on the relevant issues in his decision. R. 27–31. More specifically, the ALJ expressly noted that he did not accept that state agency consultants' opinion that Plaintiff's use of her right arm was limited to assisting while lifting and explained why:

> the limitation about overhead reaching and with the right upper extremity is generally supported by the evidence showing that the claimant reported ongoing pain after her surgeries on the right shoulder (Exh. 13F, 16F). However, the undersigned finds Dr. Olvey's opinion about the claimant's right shoulder restrictions to be more persuasive.

R. 31.

Dr. Scott Olvey is the surgeon who performed Plaintiff's shoulder surgeries. R. 30. In SSA parlance, he is a treating source. R. 30. The SSA's regulations state that "[g]enerally, we will give more weight to medical opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ noted that in May 2015, Dr. Olvey opined that Plaintiff "could perform no lifting greater than five pounds with right arm and no overhead lifting." R. 30 (citing R. 1017). The ALJ gave "great weight" to Dr. Olvey's May 2015 comments. R. 30. And it was this opinion that the ALJ found more persuasive than those of the state agency consultants who reviewed Plaintiff's file first in April and than again in August of 2015. R. 81, 119.

There is no inconsistency in an ALJ's giving "great weight" to one or more of a medical source's opinions and less weight to others, as long as he explains why. The ALJ did so here. The

6

fact that Dr. Olvey was Plaintiff's treating physician for her shoulder problems was certainly one reason to give greater weight to his opinion than those of the reviewing physicians. But that is not the only reason the ALJ gave for finding the Plaintiff had greater function in her right arm than the state agency physicians believed. The ALJ noted that Dr. Olvey commented a number of times that Plaintiff was reporting significantly more pain than would be expected at this juncture post-surgery. R. 27 (citing R. 1007–08). He noted that he believed she had poor coping mechanisms and that her depression may be affecting her perception of her shoulder pain. *Id*. Dr. Olvey also noted that physical examination revealed Plaintiff had some adequate use of her right shoulder, with full forward flexion passively and nearly full abduction. R. 30.

The ALJ also noted that Dr. Olvey did not see Plaintiff after June 2015. Over the next year leading up to the hearing in June 2016, Plaintiff continued to see Dr. Tammy Durant, her primary care physician on a regular basis and yet offered no complaints of pain concerning her right shoulder. For example, on January 5, 2016, Dr. Durant saw Plaintiff for anxiety, but a physical examination conducted in conjunction with the visit disclosed no shoulder complaints. R. 1050–53. Likewise, nine days later she was seen for a sinus problem. Again the physical examination is silent as to any shoulder problem. R. 1053–54. On January 29, 2016, Plaintiff was seen for anxiety, migraines and a sinus problem. Again, no mention of shoulder pain. R. 1055–57. The same appears in the report of a March 1, 2016 visit for migraines and as a follow-up to an emergency room visit for chest pain, R. 1057–60, and an April 15, 2016 visit for anxiety, cardiomyopathy and COPD/smoking. R. 1060–62. The absence of ongoing complaints about shoulder pain to her primary care physician also supports the ALJ's conclusion that "the claimant's alleged symptoms are not entirely consistent with and supported by the evidence of record." R. 28.

This is not to say that the ALJ accepted all of Dr. Olvey's opinions. Dr. Olvey, as well as Dr. Durant, had filled out questionnaires indicating limitations that the ALJ found unsupported by the medical and other evidence, or so conclusory in nature as not to merit any weight at all. R. 30. For example, Dr. Olvey checked a box indicating that Plaintiff was temporarily totally disabled due to her shoulder condition on the same form he completed on May 12, 2015, in which he stated she could lift up to five pounds with her right arm. R. 1018. The ALJ rejected the opinion that Plaintiff was totally disabled, even temporarily, because it was conclusory and inconsistent with his own treatment records. Additionally, because it was an opinion on an issue specifically reserved to the Commissioner, Dr. Olvey's opinion that Plaintiff was disabled is not even considered a medical opinion under SSA regulations. 20 C.F.R. § 404.1527(d), 416.927(d).

But to repeat, there is no legal or logical impediment to an ALJ according greater weight to some opinions of a medical source than he gives to other opinions. That is what the ALJ did here and, contrary to Plaintiff's assertion, he fully explained his reasons for doing so. Finally, though Plaintiff does not really argue the point, the ALJ's RFC determination is supported by substantial evidence in the record. The decision of the Commissioner is therefore affirmed. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this  19th  day of March, 2018.

                                                          s/ William C. Griesbach
                                                          William C. Griesbach, Chief Judge
                                                          United States District Court